IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| **KEGAN WARNER,** on behalf of himself and classes of persons similarly situated<br><br>Plaintiff,<br>v.<br><br>**POWER HOME REMODELING GROUP LLC,**<br><br>Defendant. | Civil Case No.: 20-cv-1452-RBJ<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

## INTRODUCTION

1. This action arises out of Defendant Power Home Remodeling Group LLC's ("Defendant") violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") and the Colorado Control of Telemarketing Fraud Act ("CTFA"), C.R.S. § 6-1-301, *et. seq*.

2. In violation of 47 U.S.C. § 227(b), Defendant placed telemarketing calls using an Automatic Telephone Dialing System ("ATDS") to Plaintiff Kegan Warner ("Plaintiff") and putative class members without their consent, including after they revoked any consent Defendant believed it may have had.

3. Furthermore, in violation of 47 U.S.C. § 227(c), through the regulation codified at 47 C.F.R. § 64.1200(d) and pertaining to Company-Specific Do-Not-Call Lists, Defendant placed telemarketing calls to Plaintiff and putative class members without implementing the policies and procedures required by law prior to making such calls.

4. In violation of C.R.S § 6-1-304(4)(I) Defendant listed the cellar telephone numbers of Plaintiff and putative class members in a directory that it uses for a commercial purpose without the affirmative consent of Plaintiff and putative class members.

5. In violation of C.R.S § 6-1-304(4)(II) Defendant used a scanner to obtain cellular telephone numbers of Plaintiff and putative class members and used those numbers to make commercial telephone solicitations to cellular telephones.

6. Accordingly, Plaintiff brings this TCPA action on behalf of himself and two classes of similarly situated individuals under 47 U.S.C. § 227(b) and § 227(c).

## JURISDICTION AND VENUE

7. This Court has jurisdiction under C.R.S. § 13-1-124, as because defendant transacts business in Colorado.

1

8. Venue is proper under C.R.C.P. 98 because Defendant may be found and served in Arapahoe County.

## PARTIES

9. Plaintiff is, and at all times relevant to this complaint, a citizen and resident of Broomfield, Colorado.

10. Plaintiff Kegan Warner is, and at all times relevant to this complaint, a "person" as defined by 47 U.S.C. § 153(39).

11. Defendant Power Home Remodeling Group, LLC is, and at all times relevant to this complaint, a Delaware corporation headquartered at 2501 Seaport Drive, Chester, Pennsylvania 19013. Defendant maintains a registered agent office at 1900 W. Littleton Boulevard, Littleton, Colorado, 80120.

12. Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

13. Defendant is, and at all times mentioned herein was, a "person" as defined by C.R.S. § 6-1-106(6).

## THE TCPA

14. The TCPA was passed in 1991 to help prevent unwanted telephone calls and solicitations, provide power to consumers to prevent unwanted solicitations, and rein in unrestricted telemarketing. *See* 47 U.S.C. § 227, *et seq.*

15. Relevantly, the TCPA provides private rights of action for three types of telemarketing-related conduct.

16. First, Section 227(b) of the TCPA prohibits initiating a telemarketing call using an automatic telephone dialing system without the prior express written consent of the called party.

17. "Prior express written consent" requires a signed writing that clearly authorizes the seller to deliver to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice. 47 C.F.R. § 64.1200(f)(8).

18. This written agreement must clearly and conspicuously disclose that the calls would be made using an automatic telephone dialing system or an artificial or prerecorded voice, and that the person is not required to sign the agreement as a condition of purchasing any property, goods, or services. *Id.* at (f)(i)(A-B).

19. A violation of § 227(b) carries statutory damages of $500 to $1,500 per call.

20. Second, § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

21. In this rulemaking proceeding, the FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific 'do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

22. Pursuant to this statutory mandate, the FCC issued two regulations, only one of which is relevant here.

23. The relevant regulation under § 227(c) established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

24. The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

25. However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

26. These procedures are codified at 47 CFR 64.1200(d)(1)-(7).

27. Specifically, § 64.1200(d) requires a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 CFR § 64.1200(d)(1, 2, 3, 6).

28. These policies and procedures prohibit a company from making telemarketing calls unless they have implemented these policies and procedures. 47 CFR 64.1200(d).

29. Accordingly, all telemarketing calls violate the TCPA unless Defendant can demonstrate that it has implemented the required policies and procedures.

30. Consent is irrelevant to § 64.1200(d).

31. A violation of § 227(c) through 47 C.F.R. § 64.1200(d) carries statutory damages of $500 to $1,500 per call.

32. Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones as well as residential telephones. 47 CFR § 64.1200(e).

### THE CTFA

33. The CTFA was enacted in 1993 to curtail unwanted telephone calls and solicitations, deter such calls, provide remedies to consumers who receive unwanted cellular telephone

solicitations, and rein in unrestricted telemarketing.

34. In 2005, the Act was amended to make it an unlawful practice for any person to list cellular telephone numbers in a directory for commercial purposes without the affirmative consent of the person whose number has been listed. C.R.S. § 6-1-304(4)(a)(I).

35. The 2005 amendment also made it unlawful for any person to use a scanning device or other electronic means to identify a cellular telephone number and to make a commercial telephone solicitation. C.R.S. § 6-1-304(4)(a)(I).

36. The CTFA provides a private right of action to consumers for violations of C.R.S. § 6-1-304 and allows consumers to recover consequential damages, court costs, attorney fees, and a penalties from $300 to $1,000 for each offense. C.R.S. § 6-1-305(1)(c).

## PLAINTIFF'S FACTUAL ALLEGATIONS

37. Plaintiff Warner is a "person" as defined by 47 U.S.C. § 153(39).

38. Plaintiff's telephone number, (XXX) XXX-4035, is assigned to a cellular telephone service.

39. In September of 2018, Plaintiff purchased a new home.

40. In approximately March of 2019, a representative from the Defendant came to Plaintiff's house to inform him that the prior owner allegedly had work done to the home and should still be under a Power HRG warranty.

41. The Power HRG representative also offered Plaintiff an offer to purchase their services himself.

42. However, Plaintiff was interested in seeing if the warranty still covered his home.

43. As a result, Plaintiff contacted called Power HRG to learn if he was covered by the warranty.

44. In return, Plaintiff began receiving autodialed telemarketing calls.

45. Upon information and belief, Plaintiff's telephone number was obtained by Defendant using a scanner or other electronic device (i.e. from a caller ID) and added to a directory used by Defendant to make commercial telephone solicitations.

46. Each call that was answered followed a distinct pattern.

47. Plaintiff would pick up the phone and there would be dead air.

48. Plaintiff then heard a click and a pause.

4

49. The pause signifies the algorithm of a predictive dialer operating. The predictive dialer dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line.

50. On information and belief, the dialing system used by Power HRG has the capacity to store telephone numbers in a database and dial them automatically with no human intervention.

51. On information and belief, the dialing system used by Power HRG stores numbers in a database, and when a simple command is executed, generates numbers from that database into a new, temporary database of numbers to be called.

52. On information and belief, using another straightforward computer command, the dialing system can also produce numbers using a sequential number generator and dial the numbers automatically.

53. In that scenario, the dialing system could dial a number such as (555) 000-0001, then (555) 000-0002, and so on.

54. This would be done without any human intervention or further effort.

55. On information and belief, the dialing system used by used by Power HRG is driven by software that utilizes an algorithm that determines when Power HRG will make a phone call. The dialer makes this determination automatically and without human intervention. These characteristics too are indicative of an Automatic Telephone Dialing System.

56. The Plaintiff would then be transferred to a telemarketing representative who would attempt to sell him Power HRG services, which he wasn't interested in.

57. On August 31, 2019, Mr. Warner made a telephone call to Power HRG to ask that he no longer be contacted.

58. Power HRG confirmed that he would be added to its Do Not Call list.

59. However, the calls continued.

60. In fact, the Plaintiff believes he has received 12 calls since the date of his call to Power HRG.

61. Plaintiff never provided Defendant with "prior express written consent" or "affirmative consent" as defined by law.

62. Plaintiff never filled out any contact form on Defendant's website or otherwise provide is contact information to Defendant through its website, nor did he provide any consent to receive calls through Defendant's website.

63. Plaintiff is not alone in his experiences with Defendant ignoring do-not-call requests.

64. Numerous online reviews indicate the widespread nature of Power HRG's persistent

unwanted calling:

- A June 12, 2019 Better Business Bureau ("BBB") complaint states: "I have asked this company to stop soliciting at my house because they do not know when to stop. I asked them to stop calling me and they continue to call. I also ask them to take me off of their list and yet they continue to knock at my door. Every salesman says the same thing to me that "they didn't know and only wanted to see if I want a free quote". Even after I ask them to leave they will continue to push."[1]

- A February 2, 2019 BBB complaint states: "Calls house phone (###-###-####) several times a day. I have answered twice and told a man I'm not interested. The company continues to call - 12 times in the last 5 days. This has been going on for several weeks."

- A July 22, 2018 BBB complaint states: "We receive sales calls from ************ Caller ID: *********** almost daily despite the fact that we are on the Do Not Call registry and have told them this numerous times and requested they stop calling. On 7/14/18 we received 5 calls from them within the space of an hour. Three of them were on our landline: 7/14/18 10:18am 7/14/18 10:42am 7/14/18 11:04am When we answered the last call a recording said to please hold on while they transfer us to confirm our appointment. Two of the other calls were on our cell phone. Please help us stop these nuisance calls."

- A Yelp review on August 11, 2017 states: "Terrible experience and now they will not stop calling. On the verge of filing harassment charges after telling them to stop calling many times. I had to call block them. Ugh!"

- A Yelp review on December 20, 2016 states, in part: "I made the mistake of giving them my number when I told one of their sales reps Id let them know about a possible roof replacement. Now they are non stop calling for 3 months and counting!!"

65. Accordingly, pursuant to § 227(b), Plaintiff is entitled to $500 per call made to his cellular telephone number without his express written consent, which includes calls made after his revocation of consent.

66. Plaintiff is entitled to $1,500 per call if the Court finds that the violations were knowing and/or willful.

67. Defendant also did not maintain the policies and procedures required for maintaining a do-not-call list, as required by the regulation 47 C.F.R. § 64.1200(d), prescribed under 47 U.S.C. § 227(c).

68. Specifically, Defendant did not maintain a written do-not-call policy.

---

[1] Any typos, alterations, or errors in this section were part of the included complaint or review.

69. Defendant further did not train its telemarketers on the existence and use of any do-not-call policy.

70. Defendant further did not document do-not-call requests when made, nor did it honor such requests.

71. Plaintiff received more than one telemarketing call from Defendant in violation of this regulation.

72. Accordingly, Plaintiff is entitled to an additional $500 for each call placed to his telephone number in violation of regulation 47 C.F.R. § 64.1200(d), prescribed pursuant to 47 U.S.C. § 227(c).

73. Plaintiff is entitled to $1,500 per call for violations of § 227(c) if the Court finds that the violations were knowing and/or willful.

74. Plaintiff is entitled to a penalty of $300 to $500 for a first violation of C.R.S. § 6-1-304(4), and $500 to $1,000 for each subsequent offense.

75. Plaintiff has suffered actual injury because of Defendant's telemarketing telephone calls, including, but not limited to:

- Receiving a telemarketing call despite affirmatively placing his number on the national "do not call" registry and asking that he no longer receive calls from the Defendant;

- Reduced device storage;

- Lost time tending to and responding to the calls;

- Mental energy;

- Invasion of Privacy;

- Nuisance;

- Deprivation of the right to request, receive, and act in accordance with the mandated "do not call" policy to stop further calls.

- Increased risk of all the above.

## CLASS ACTION ALLEGATIONS

79. Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of four Classes, defined as follows:

Since April 28, 2016, Plaintiff and all persons within the United States to whose cellular telephone number Defendant placed a telemarketing call using dialing equipment and/or software identical or substantially similar to the dialing equipment and/or software used to place telephone calls to Plaintiff without the prior express written consent of the called party.

("Dialer Class")

Since April 28, 2016, Plaintiff and all persons within the United States to whose telephone number Defendant placed (or had placed on its behalf) two or more telemarketing telephone calls in a 12-month period.

("Policy Class")

Since March 31, 2017 Plaintiff and all persons within Colorado and have a cellular telephone with a Colorado area code whose cellar telephone numbers were listed without affirmative consent by Defendant in a directory it used for commercial purposes.

("Colorado Directory Class")

Since March 31, 2017 Plaintiff and all persons in who have a cellular telephone with a Colorado area code whose cellular telephone numbers were identified by Defendant using a scanner or other electronic device to make a commercial telephone solicitation.

("Colorado Scanner Class")

80. Excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

81. **Ascertainability**: The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendant maintains written and electronically stored data showing:

    a. The time period(s) during which Defendant placed its telephone calls;

    b. The telephone numbers to which Defendant placed its telephone calls;

    c. The dates Defendant placed telephone calls to each class member;

    d. The names and addresses of Class members;

    e. The equipment and method used to identify telephone numbers;

    f. The compilation of the directory used for commercial purposes;

8

      g.  The equipment Defendant used to call Class members.

83. **Commonality**: There are common questions of law and fact affecting the rights of the Members of the Classes, including, *inter alia*, the following:

      a.  Whether Defendant made telemarketing calls;

      b.  Whether Defendant uses an automatic telephone dialing system;

      c.  Whether Defendant uses a scanner or other electronic means to identify and store telephone numbers;

      d.  Whether Defendant obtains prior affirmative consent or express written consent and/or tracks revocation of such consent;

      e.  Whether Defendant lists cellular telephone numbers in a directory for commercial purposes;

      f.  Whether Defendant maintained a written policy or other procedures to obtain and track the affirmative consent of the person whose number is listed in its directory;

      g.  Whether Defendant maintained a written "do not call" policy;

      h.  Whether Defendant trained its employees or agents engaged in telemarketing on the existence and usage of any "do not call" policy;

      i.  Whether Defendant recorded or honored "do not call" requests;

      j.  Whether Plaintiff and the Classes were damaged thereby, and the extent of damages for such violations; and,

      k.  Whether Defendant should be enjoined from engaging in such conduct in the future.

84. **Typicality**: Plaintiff's claims are typical of the claims of the Members of the Classes in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

85. Plaintiff is a member and his claims are typical of the Dialer Class because Defendant placed telephone calls to his cellular telephone using an automatic telephone dialing system without his consent.

86. Plaintiff is a member and his claims are typical of the Policy Class because Defendant placed two or more calls for telemarketing purposes in a one-year period to his telephone number without having the required policies, procedures, and training in place.

87. Plaintiff is a member and his claims are typical of the Colorado Directory Class because Defendant listed his cellular telephone numbers in a directory it uses for commercial purposes without affirmative consent.

88. Plaintiff is a member and his claims are typical of the Colorado Scanner Class because Defendant listed used a scanner or other electronic device to identify his cellular telephone number and made a commercial solicitation.

89. Plaintiff and all putative Class Members have also necessarily suffered concrete injury, as all Members spent time tending to Defendant's calls, lost space on their devices, had their phone lines tied up, and suffered a nuisance and an invasion of their privacy as they were unable to effectively stop the calls if they wanted to do so, or obtain a "do not call policy" upon which they could rely to stop the calls.

90. With respect to the Registry and Policy Classes specifically, Defendant's failures to abide by those regulations also increased the risk of harm (such as nuisance and invasion of privacy) to Plaintiff and those Class Members.

91. **Adequacy**: Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

92. Plaintiff will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent himself and the Classes.

93. Defendant has acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

94. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

95. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

96. Common questions will predominate, and there will be no unusual manageability issues.

### FIRST CLAIM FOR RELIEF
### Violations of the TCPA, 47 U.S.C. § 227(b)
### (On Behalf of Plaintiff and the Dialer Class)

97. Plaintiff and the proposed Dialer Class incorporate all allegations set forth in this Complaint as if fully set forth herein.

98. Defendant placed numerous calls for telemarketing purposes to Plaintiff's and Dialer Class Members' cellular telephone numbers.

99. Defendant did so using an automatic telephone dialing system.

100. Defendant did so without the prior express written consent of Plaintiff and Dialer Class Members.

101. Plaintiff and Dialer Class Members are entitled to an award of $500 in statutory damages telephone call pursuant to 47 U.S.C. § 227(b)(3).

102. Plaintiff and Dialer Class Members are entitled to an award of treble damages in an amount up to $1,500 telephone call because Defendant's violations were knowing and/or willful.

## SECOND CLAIM FOR RELIEF
### Violations of the TCPA, 47 U.S.C. § 227(c)
### (On Behalf of Plaintiff and the Policy Class)

103. Plaintiff and the proposed Policy Class incorporate all allegations set forth in this Complaint as if fully set forth herein.

104. Defendant placed numerous calls for telemarketing purposes to Plaintiff's and Policy Class Members' telephone numbers.

105. Defendant did so despite not having a written policy pertaining to "do not call" requests.

106. Defendant did so despite not training its personnel on the existence or use of any internal "do not call" list or policy.

107. Defendant did so despite not recording or honoring "do not call" requests.

108. Defendant placed two or more telephone calls to Plaintiff and Policy Class Members in a 12-month period.

109. Plaintiff and Policy Class Members are entitled to an award of $500 in statutory damages telephone call pursuant to 47 U.S.C. § 227(c)(5), in addition to and separate from any award for damages related to Defendant's calls using an automatic telephone dialing system and in addition to and separate from any award for Defendant's calls to persons on the National Do-Not-Call Registry.

110. Plaintiff and Policy Class Members are entitled to an award of treble damages in an amount up to $1,500 per telephone call because Defendant's violations were knowing and/or willful.

## THIRD CLAIM FOR RELIEF
### Violations of the CTFA, C.R.S. § 6-1-304(a)(II)
### (On behalf of the Plaintiff and the Colorado Scanner Class)

111. Plaintiff and the proposed Colorado Scanner Class incorporate all allegations set forth in this Complaint as if fully set forth herein.

112. Defendant is a "person" as defined by C.R.S. § 6-1-106(6).

113. Upon information and belief, Defendant used a scanning device or other electronic means to identify cellular telephone numbers of Plaintiff and persons in the Colorado Scanner Class.

114. Defendant did so without the prior express written consent of Plaintiff and Colorado Scanner Class Members.

115. Plaintiff and Colorado Scanner Class members are entitled to the penalty of $300 to $1000 per call as provided by C.R.S. § 6-1-305(1)(c).

## FOURTH CLAIM FOR RELIEF
Violations of the CTFA, C.R.S. § 6-1-304(a)(II)
(On behalf of the Plaintiff and the Colorado Directory Class)

116. Plaintiff and the proposed Colorado Directory Class incorporate all allegations set forth in this Complaint as if fully set forth herein.

117. Upon information and belief, Defendant listed the cellular telephone number of Plaintiff and Colorado Directory Class Members in a directory it used for commercial purposes.

118. Defendant did so without the prior express affirmative consent of Plaintiff and Colorado Directory Class Members.

119. Plaintiff and Colorado Directory Class Members are entitled to the penalty of $300 to $1000 per call as provided by C.R.S. § 6-1-305(1)(c).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Warner, individually and on behalf of the Classes, prays for the following relief:

A. An order certifying the Classes as defined above, appointing Plaintiff Warner as the representative of the Classes and appointing his counsel as Class Counsel;

B. An order declaring that Defendant's actions, as set out above, violated 47 U.S.C. § 227(b) and § 227(c);

C. An order declaring that Defendant's actions, as set out above, violated C.R.S. § 6-1-304(4)(a)(I) and (II);

D. An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

E. An award of statutory damages for each violation of 227(b) and (c) and the regulations promulgated thereunder;

F. An award of damages and penalties provided for at C.R.S. § 6-1-305(c);

G. An award of treble damages;

H. An award of reasonable attorneys' fees and costs; and,

I. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated this 23 day of June, 2020.

s/ Jeremy M. Glapion
Jeremy M. Glapion
**The Glapion Law Firm, LLC**
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732.455.9737
Fax: 732.965.8006
jmg@glapionlaw.com

Attorney for Plaintiff
